# United States District Court
# District of Massachusetts

_____
                                          )
**KENNETH G. METCALF and**                )
**NANCY METCALF,**                        )
    Plaintiffs          )
                                          )
    v.                  )        **CIVIL ACTION**
                                          )        **No. 12-40075-TSH**
**BAY FERRIES LIMITED,**                  )
    Defendant            )
_____ )

## MEMORANDUM AND ORDER ON
## MOTIONS TO DISMISS AND STRIKE
### March 25, 2013

**HILLMAN, J.**

## I. Procedural Background

    This is a common law tort action for negligence brought by Kenneth Metcalf ("Mr. Metcalf") and Nancy Metcalf ("Mrs. Metcalf") (collectively "Plaintiffs") against Bay Ferries ("Defendant") for damages resulting from severe injuries suffered by Mr. Metcalf on August 14, 2009.  There is complete diversity of citizenship between the parties, thus subject matter jurisdiction is appropriate under 28 U.S.C. § 1332.  This litigation was initiated on June 12, 2012.  Plaintiffs allege that Defendant was negligent in maintaining its ferry, HSC INCAT 059 "The CAT" and that this negligence led directly to Mr. Metcalf's injuries and resulting damages to Plaintiffs.  Defendant moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P. 12(b)(3), and *forum non conveniens*.  Plaintiffs oppose the motion to dismiss on all counts and additionally move to strike the affidavit of

Donald Cormier ("Cormier") attached to Defendant's motions to dismiss.  Defendant opposes this motion to strike.  For the following reasons, Defendant's motion to dismiss is denied on all grounds and Plaintiffs' motion to strike is allowed in part and denied in part.

## II. <u>Facts</u>

### a. <u>Defendant's Inclusion of Extrinsic Evidence</u>

Plaintiffs argue that Cormier's affidavit was (1) not properly supported by an oath, and (2) not based upon the personal knowledge necessary to support many of the statements included in the affidavit.  Defendant avers that the affidavit was properly supported by oath, save only a minor error of phrasing, and that Cormier is competent to testify as to the matters asserted.

The Court rejects Plaintiffs' first argument.  Plaintiffs seek to strike the affidavit in its entirety because the phrase "under the laws of the United States" was omitted from the signing oath.  While technically a violation of 28 U.S.C. 1746, the Court cannot see how justice is served by rejecting the affidavit entirely for a minor oversight when there is no indication of bad faith on the part of Cormier.  Moreover, Defendant has filed a second copy of the affidavit with this defect corrected.

Plaintiffs' second argument is more substantial.  The affidavit in question contains several statements which are apparently unsupported by personal knowledge.  Cormier does not claim to have been present at the time of Mr. Metcalf's injuries, nor when the Metcalf family booked tickets for the journey upon which Mr. Metcalf was injured and therefore can have no personal knowledge of these events.  Additionally, many of the statements included in the affidavit are conclusory statements of law, rather than attestations of fact.  Nevertheless other statements, such as those regarding the corporate structure of Defendant and the service history of The CAT, are supported by personal knowledge given Cormier's position as a senior officer

of Defendant.  Therefore, paragraphs 1, 7, 8, 14-18, 20-24 will not be considered by the Court

with regard to any motion to dismiss.  The affidavit's preamble, as well as paragraphs 2-6, 9-13

and 19 are permitted under Rule 56(c)(1), and will be considered where appropriate.

There is, however, one final wrinkle in the question of what facts this Court may properly

consider.  Rule 56(c)(4) establishes the standard for the admissibility of extrinsic affidavits in the

context of motions for summary judgment.  This standard is also applicable for some, but not all

motions to dismiss.  *West Marine Products, Inc. v. Dolphinite, Inc.*, 2005 WL 1000259 at \*1-\*2

(D.Mass. 2005); *see also Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 596 n.3

(D.C. Cir. 2009) (citing *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982) for

the proposition that the standards set forth in Rule 56, were equally applicable in the context of a

Rule 12(b)(1) motion to dismiss).  This is true for motions to dismiss for lack of personal

jurisdiction and *forum non conveniens*, but not for motions to dismiss for improper venue.  *See*

*Rivera v. Centro Medico De Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009); *West Marine*, 2005

WL 1000259 at \*1-\*2.  Although formally filed under Rule 12(b)(3), motions to dismiss for

improper venue based on forum selection clauses are, in the First Circuit, considered using the

same standard as Rule 12(b)(6) motions to dismiss.  *Rivera*, 575 F.3d at 15.  Accordingly, the

Court will consider only those facts contained in the complaint or incorporated by reference, and

will construe all such facts in the light most favorable to Plaintiffs.  *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).  Conversely, documents that are neither contained

in the complaint nor incorporated therein by reference must be excluded from consideration.

*Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

Therefore, the *Aff. of Donald Cormier* (Docket No. 6-1) will be excluded—along with the

subsequent affidavits filed by Defendant—from the Court's analysis of the motion to dismiss for

improper venue.

b. *Facts Considered by the Court*[1]

Plaintiffs are a married couple and both reside in Oxford, Massachusetts.  Defendant is a Canadian corporation with a principle place of business in Charlottetown, Prince Edward Island, Canada.  Defendant owned and operated The CAT as a commercial passenger and vehicle ferry between Maine and Nova Scotia at all times relevant to this dispute.[2]  The CAT is a 319-foot-long catamaran vessel capable of carrying more than eight hundred passengers and two hundred automobiles.  Defendant took delivery of The Cat in 2002 and operated it as a passenger ferry in the Gulf of Maine, between from 2002-2009.  The CAT operated two routes, between Portland, Maine and Yarmouth, Nova Scotia, and between Bar Harbor, Maine and Yarmouth Nova Scotia.  Although it operated entirely in Canadian and American territorial waters, The CAT was registered in the Bahamas.  Defendant solicited business in Massachusetts through the use of various advertising media.  In addition to internet ads on www.boston.com, Defendant advertised its services, including The CAT, on Boston area TV channels from March to September 2009.  Plaintiffs aver that they were exposed by various media—including television, Triple-A regional publications, and the Worcester Telegram & Gazette—to  Defendant's advertisements for The CAT prior to February 2009.  Defendant's vessels did not regularly travel to Boston, Massachusetts, but did so on three separate occasions in 1999, 2002 and 2006 as part of a Nova Scotia Tourism Tradeshow.  The CAT itself visited Boston for the latter two tradeshows, in 2002 and 2006.

---

[1] Note that all facts derived from the surviving portions of the *Corrected Cormier Aff.* (Docket No. 6-1) will be used by the Court for the purposes of considering Defendant's motions to dismiss for lack of personal jurisdiction and for *forum non conveniens*.  Defendant's motion to dismiss for improper venue will be adjudicated solely on the basis of Plaintiffs' well-pleaded submissions.

[2] Defendant Bay Ferries stopped operating The CAT in October 2009 and sold it to a Chinese corporation in 2011. *Corrected Cormier Aff.* ¶ 4.

In February 2009 Plaintiffs' daughter Nicole Green reserved by phone, passage for Plaintiffs' entire family on The CAT from Portland, Maine to Yarmouth, Nova Scotia in August 2009. The occasion for this journey was Mr. Metcalf's sixtieth birthday. Plaintiffs' reservation was confirmed via an email to Nicole Green from Defendant, although the email did not contain any explicit terms, conditions or limitations.

The Metcalf family drove to Portland, Maine on August 14, 2009 and entered a line of cars waiting to board The CAT. Immediately prior to driving onto the ferry Mr. Metcalf received physical tickets at a drive-through box office. Mr. Metcalf was handed a small folder of materials—characterized as an advertising jacket by Plaintiffs—containing: a boarding pass that identified each passenger by name; Canadian customs forms; advertising information; and a list of terms and conditions of passage. Both parties agree that the jacket containing these terms and conditions were given to Mr. Metcalf shortly before he drove onto The CAT.[3] This jacket has no external indication that it contained terms and conditions. Such a notice appears on the bottom of the left interior panel of the jacket and the terms themselves are printed in small, dense but still quite legible print. The terms and conditions include twelve terms labeled (a) – (l). In addition to waivers of liability, and agreements to obey crewmember instructions, the very last term, (l), is a forum selection clause that explicitly requires any dispute arising from passage on

---

[3] There is some dispute as to the nature and contents of this jacket. Defendant has submitted one advertising jacket and a set of included materials as examples of what Plaintiffs would have received in August 2009. *Exhibit "A"* (Docket No. 20-2). Plaintiffs submit copies of the actual materials received by Plaintiffs in August 2009. *Plaintiff's Exhibit C* (Docket No. 12-3). There are several differences between the two sets of jackets/documents. Those filed by Plaintiff are as described in the facts above, those filed by Defendant include, most significantly, a document stating "One Way Ticket" in English and French as well as "This contract is subject to the terms and conditions on the reverse side hereof," and "Not Refunded After Date of Departure." No document submitted by Plaintiffs contains any such language. This Court accepts the submissions of Plaintiffs over those of Defendant. Plaintiffs affirm via affidavit that their submissions are the photocopies of the actual materials given to Plaintiffs in August 2009, while Defendant affirms only that its submissions are representative specimens of materials given to all passengers on The CAT. Moreover, the materials submitted by Plaintiffs contain Canadian customs documents while those submitted by Defendant contain U.S. customs entry documents. It is unlikely that Plaintiffs would have been given U.S. customs entry forms on the day at issue when they were traveling from the United States to Canada.

The CAT to be litigated in a Canadian court under the provincial laws of Nova Scotia and the

federal laws of Canada.

After traveling across the Gulf of Maine without incident, Plaintiffs and their family

prepared to disembark in Yarmouth, Nova Scotia.  The Metcalf family began moving from The

CAT's passenger deck to the lower vehicle deck, a journey which required them to use a

stairwell.  While traversing this staircase Mr. Metcalf fell, injuring his cervical spine.  There

were no witnesses except members of Mr. Metcalf's family (his wife, daughter, son-in-law, and

grandchild).  Mr. Metcalf initially received medical care from other ferry passengers with

medical training.  He was then taken first to Yarmouth Regional Hospital and then to Queen

Elizabeth Hospital in Halifax, Nova Scotia for stabilization and intensive care.  After six days of

treatment in Canada, Mr. Metcalf was airlifted to Massachusetts for continuing medical care, and

has not traveled any further afield than Boston, Massachusetts, since sustaining the injury.  As a

result of this fall, Mr. Metcalf fractured several of his cervical vertebrae and is now an

incomplete C5-C7 tetraplegic, largely confined to a wheelchair.  He requires some sixty hours of

personal care attendance per week.  This personal care is currently paid for by Cerebral Palsy of

Massachusetts, located in Quincy, Massachusetts.  Plaintiffs aver that they are unable to pay for a

personal care attendant to travel with them to Canada should it become necessary for them to

attend a trial in Nova Scotia.

In addition to the present action in U.S. District Court for the District of Massachusetts,

Plaintiffs have pursued parallel civil litigation against Defendant, seeking recovery for the same

injury, in the Supreme Court of Nova Scotia since June 2010.  Plaintiffs' counsel in that

proceeding, Hugh Robichaud ("Robichaud"), avers that he was retained in late August 2009.

Robichaud indicates that it will take at least another twenty-four months to set a trial date and

thirty months to receive a final judgment in that litigation.  Additionally, Canadian law would limit any recovery by Plaintiffs in a Canadian court to approximately $264,000.  Robichaud notes that should litigation proceed before this Court, he would advise Mr. Metcalf to move for discontinuance in Nova Scotia, in order to prevent parallel litigation is separate jurisdictions.  In August 2012 Plaintiffs initiated a suit in the United States District Court for the District of Maine, also seeking recovery for the same injury, but have expressly indicated that they have no intention to proceed with simultaneous suits in two separate U.S. District Courts.

### III. <u>Discussion</u>

### a. *Personal Jurisdiction*

In a diversity case such as this, personal jurisdiction can only exist where both state and constitutional requirements are met.  First, the circumstances of the litigation must satisfy the Massachusetts Long-arm Statute, Mass. Gen. Law ch. 223A, § 3.  Additionally constitutional due process concerns must also be satisfied as per the "traditional notions of fair play and substantial justice" analysis described in *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 66 S.Ct. 154 (1945).  Due process protects the defendant from being subject to the judgments of a forum with which he or she has not established "meaningful contacts, ties, or relations."  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S.Ct. 217 (1985)).  In Massachusetts, the Supreme Judicial Court has interpreted the state long-arm statute as coextensive with the constitutional limits set forth in *Int'l Shoe*, so the federal analysis is dispositive in this case.  *See Daynard*, 290 F.3d at 52; *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 443, 280 N.E.2d 423, 424 (1972).

District Courts may employ a variety of analyses to assay the existence of personal jurisdiction under the *Int'l Shoe* standard, but the most common is the prima facie method. *Northern Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 22 (1st Cir. 2005) (quoting *Daynard*, 290 F.3d at 50-51). It "permits the district court 'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995) (quoting *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)). Under the prima facie method, the plaintiff "must do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality. Thus, allegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts." *Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001). Nor is the Court required "to credit conclusory allegations or draw farfetched inferences." *Mass. School of Law*, 142 F.3d at 34 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)). However, the Court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel* (*Adelson I*), 510 F.3d 43, 48 (1st Cir. 2007)); *Foster-Miller*, 46 F.3d at 145. The Court may also accept as true the uncontradicted facts put forward by the defendant. *Mass. School of Law*, 142 F.3d at 34. This prima facie method is appropriate here where the material facts are largely undisputed. *See Foster-Miller*, 46 F.3d at 145-46 (describing the alternative preponderance-of-the-evidence and likelihood standards).

Personal jurisdiction over a defendant can rest upon either a general or specific basis.

*Mass. School of Law,* 142 F.3d at 34.  "Specific jurisdiction exists when there is a demonstrable

nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the

litigation itself is founded directly on those activities."  *Id.*  In contrast, general jurisdiction will

exist where the defendant "engaged in continuous and systematic activity, unrelated to the suit,

in the forum state" and imposes a significantly more stringent standard.  *Id.*

### 1. Specific Jurisdiction

Specific jurisdiction has "three distinct components: relatedness, purposeful availment

(sometimes called 'minimum contacts'), and reasonableness." *Adelson v. Hananel* (*Adelson II*),

652 F.3d 75, 80-81 (1st Cir. 2011) (quoting *Hannon v. Beard*, 524 F.3d 275, 282 (1st Cir. 2008).

Of these, the first component, relatedness, is most important in distinguishing between specific

and general jurisdiction.  *Nowak v. Tak How Invs.*, 94 F.3d 708, 714 (1st Cir. 1996).  This Court

will address each component in turn.

### A. Relatedness

The relatedness test, in the context of tort cases, turns on causation and focuses on the

nexus between a plaintiff's injury and a defendant's actions.  *Ticketmaster*, 26 F.3d at 206.  Here

Plaintiffs contend that there is a substantial nexus between Defendant's advertising activities and

Mr. Metcalf's ultimate injuries.  Plaintiffs point to Defendant's substantial advertising efforts in

Massachusetts as well as the emphasis placed on The CAT 's proximity to Boston in both

advertising materials and on Defendant's website.  Defendant relies upon a long list of

persuasive authority holding that advertisements alone are insufficient to satisfy the relatedness

test.  *E.g., Gray v. O'Brien*, 777 F.2d 864, 867 (1st Cir. 1985); *Figawi, Inc. v. Horan*, 16

F.Supp.2d 74, 80-81 (D. Mass. 1998); *Droukas v. Drivers Training Acad., Inc.*, 376 N.E.2d 548, 550-553  (Mass. 1978).

Defendant's argument is unavailing.  All of the cases upon which it relies can be distinguished from this dispute.  In *Gray* the First Circuit declined to find personal jurisdiction on the basis of limited, but targeted, advertising activities in Massachusetts.  *Gray*, 777 F.2d at 867.  However, in that case there was no evidence of any nexus between those advertising activities and the ultimate injury to the plaintiff, to the contrary there was evidence suggesting that the plaintiff's injuries resulted from contacts between the parties in a non-forum state.  *Id.* In *Figawi* the plaintiff similarly failed to prove a nexus between the defendant's advertising activities and the plaintiff's injuries.  *Figawi*, 16 F.Supp.2d at 80-81.  Finally in *Droukas*, the quantity of the defendant's contacts with the forum state was insufficient to support a finding of personal jurisdiction.  *Droukas*, 376 N.E.2d at 552-53.  None of these fact patterns are replicated here.

Defendant also overlooks more relevant caselaw from the First Circuit and the District of Massachusetts.  The First Circuit has held that "when a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result."  *Nowak v. Tak How Invs.*, 94 F.3d 708, 715 (1st Cir. Mass. 1996).  More recently this Court has held that "solicitation of business from Massachusetts residents…[is] sufficient to satisfy the requirements of the long-arm statute."  *Rooney v. Walt Disney World Co.*, 2003 WL 22937728 at 6-7 (D. Mass. Nov. 25, 2003).   Another recent case, *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 34 (1st Cir. 2010), is particularly helpful.  It  explicitly states that "[the defendant in *Cossaboon* did] not purchase advertisements in any New Hampshire-based

newspapers, telephone directories, or radio or television stations[,]" its advertising efforts were "not targeted toward New Hampshire residents in particular" and therefore did not create personal jurisdiction  *Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 34 (1st Cir. N.H. 2010). *Cossaboon* thereby impliedly holds that advertisement purchases targeted at New Hampshire residents in particular would have been sufficient to establish personal jurisdiction.  *See id.* Defendant here *did* place targeted advertisements in Massachusetts-based newspapers and on Massachusetts televisions channels, as well as actively solicit business in Boston on multiple occasions.  Plaintiffs aver that they were principally motivated to book passage on The CAT by their exposure to these advertising efforts.  *Aff. of Kenneth Metcalf* ¶ 4 (Docket No. 12-3); *Aff. of Nancy Metcalf* ¶ 5 (Docket no. 12-5).   When construing the well-pleaded facts the light most favorable to Plaintiffs, Defendant has engaged in substantial and targeted advertising activities that contributed to Plaintiffs' purchase of services from Defendant.

Another recent District Court for the District of Massachusetts decision expressly states that causation is the touchstone of the relatedness test in Massachusetts for foreign tort actions. *Weinberg v. Grand Circle Travel, LLC.*, 2012 WL 4096611 at 11 (D. Mass. Sept. 19, 2012) (distinguishing between tort and contract claims when determining personal jurisdiction). Defendant argues that it cannot be the 'but-for' cause of Plaintiffs' injury because Plaintiffs cannot prove that, but for Defendant's advertising efforts, they would not have traveled to Yarmouth via The CAT, relying on *Harlow v. Children's Hospital*, 432 F.3d 50 (1st Cir. 2005). This argument relies upon the proverbial impossibility of proving a universal negative, and misstates the burden placed upon Plaintiffs for the relatedness test.  Plaintiffs need not show that they absolutely would not have traveled on The CAT "but-for" defendant's advertisements, but only that "[Defendant's] own conduct increases the likelihood that a specific resident will

respond favorably." *Nowak*, 94 F.3d 708, 715 (1st Cir. 1996).  Where, as here, "the resident is harmed while engaged in activities integral to the relationship the [Defendant] sought to establish…the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage." *Id.* at 715-716.  In short Defendant sought to create a carrier-passenger relationship with Plaintiffs through targeted advertising efforts and did ultimately create such a relationship.  Defendant's activities therefore created a substantial nexus with Plaintiffs' injuries and the relatedness test is satisfied.

B. <u>Purposeful Availment</u>

This component of personal jurisdiction analysis is often referred to as minimum contacts and was first articulated in the *Int'l Shoe*.  326 U.S. at 316.  The essential factor in this analysis is volition.  Justice has no interest in subjecting defendants to jurisdiction as a result of arbitrary or accidental contacts—such  as those created unilaterally by a third party—with  a forum state.  *Id.* at 317.  However, where a defendant has intentionally taken advantage of the benefits of acting within the forum state, that defendant necessarily subjects itself to jurisdiction in the same. *Rooney*, 2003 WL 22937728 at 3.

Here several facts pleaded by Plaintiffs, along with those properly asserted by Defendants via affidavit, create a prima facie case that defendant purposefully availed itself of the benefits of business in Massachusetts.  Defendant concedes that it engaged in advertising activities targeted at Massachusetts residents during the summer of 2009 and, although it provided no details, also admits to conducting similar advertisements in previous years.  Defendant also admits that The CAT itself visited Boston on three separate occasions as part of a Nova Scotia Tourism Tradeshow.  Active participation in a tourism tradeshow combined with repeated, targeted advertisements through local distribution channels satisfies the volition requirement established

in *Int'l Shoe* and *Rooney*.  *See Int'l Shoe* 326 U.S. at 317; *Rooney*, 2003 WL 22937728 at 3.  The

Court therefore finds that Defendant has purposefully availed itself of the benefits of conducting

business in Massachusetts and is the "minimum contacts" standard is met.[4]

### C. Reasonableness

Reasonableness is determined by considering the so-called

> gestalt factors "(1) [the defendant's] burden of appearing, (2) [Massachusetts's] interest in
> adjudicating the dispute, (3) [the plaintiff's] interest in obtaining convenient and effective relief,
> (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and
> (5) the common interests of all sovereigns in promoting substantive social policies."

*Adelson II*, 652 F.3d at 83 (quoting *Adelson I*, 510 F.3d at 51).  The First Circuit has indicated

that "insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or

costly, we think this factor is only meaningful where a party can demonstrate some kind of

special or unusual burden."  *Pritzker v. Yari*, 42 F.3d 53, 59 (1st Cir. 1994).  Defendant has not

indicated any special or unusual burden above and beyond the normal inconveniences of

litigating in a foreign locale.  As to the second factor, Massachusetts clearly has some interest in

jurisdiction as Plaintiffs are both Massachusetts residents, and Defendant's purposeful availment

of business in Massachusetts only increases that interest.  In *Adelson II* the First Circuit was

content to rely upon the plaintiff's choice of venue as an indication of the plaintiff's interest in

obtaining convenient and effective relief.  *Adelson II*, 652 F.3d at 84.  This precedent

complicates the present dispute as Plaintiffs initially filed suit over two years ago in Canada and

have subsequently filed a third action in U.S. District Court in Maine.  Nevertheless, Plaintiffs

have averred that Massachusetts is their preferred venue, and this statement is given weight by

Mr. Metcalf's healthcare needs.  The fourth and fifth factors are difficult to balance either for or

---

[4] Although the "minimum contacts" test is satisfied here for the reasons stated above, this Court ascribes little
jurisdictional weight to the website maintained by Defendant, noting that Plaintiff has not pleaded any particularized
facts suggesting that the website was specifically targeted at Massachusetts residents.  Nor is this Court eager to find
that the maintenance of a website creates universal jurisdiction.

against jurisdiction in Massachusetts, as the sovereign interests of the Commonwealth in this case cannot easily be characterized as stronger or weaker than the sovereign interests of Canada: each sovereign claims one party as a citizen, and the extent to which the injury occurred in Canadian territory is offset by the extent to which the burden of the injury rests on the Commonwealth. The combined weight of the gestalt factors is not particularly determinative here, but is in favor of Plaintiffs given Mr. Metcalf's special healthcare requirements.

Furthermore, the First Circuit has stated that where there are strong showings of relatedness and purposeful availment, the significance of the reasonableness factor is "slight." *Adelson II*, 652 F.3d at 83 (citing *Sawtelle v. Farrell*, 70 F.3d 1381, 1393 (1st Cir. 1995)). In light of this precedent and because the relatedness and purposeful availment factors weigh in Plaintiffs' favor, this Court will find reasonableness. Consequently, Defendant is, for this litigation, subject to specific personal jurisdiction in Massachusetts. It is also unnecessary to consider jurisdictional discovery or the presence or absence of general personal jurisdiction.

### b. *Forum Non Conveniens*

Defendant also moves to dismiss under the common law doctrine of *forum non conveniens*. This doctrine gives courts discretion to dismiss cases where jurisdiction is otherwise appropriate upon a showing that "an adequate alternative forum exists and that 'considerations of convenience and judicial efficiency *strongly* favor litigating the claim in the second forum.'" *Adelson I*, 510 F.3d at 52 (quoting *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000)) (emphasis added). There is a very strong presumption in favor of a plaintiff's choice of forum that must be overcome before dismissal is appropriate. *See Adelson I*, 510 F.3d at 52. The First Circuit has also recognized a "strong presumption favoring the American forum selected by

American plaintiffs." *Adelson I*, 510 F.3d at 53 (citing *Mercier v. Sheraton Int'l Inc.*, 981 F.2d 1345, 1355 (1st Cir. 1992)).

There are compelling equities favoring both parties in this dispute and this Court finds these various considerations of relatively equal merit. Neither party disputes the availability of Canada as an alternative forum, but Plaintiffs argue that the Nova Scotia Supreme Court offers only an inadequate remedy due to several legal and logistical factors. Plaintiffs note that their potential recovery in Canada is statutorily capped at roughly $264,000, and according to the declaration of their Canadian counsel, a final judgment in Nova Scotia will also take at least an additional thirty months. Most significantly, Plaintiffs note that as a direct result of the injuries that form the underlying cause of action in this suit, Mr. Metcalf is an incomplete tetraplegic, is largely confined to a wheelchair and requires up to sixty hours of home medical care each week, care which would not be available outside of the United States.

Plaintiffs would face considerable burdens if forced to litigate in Canada, yet the record indicates that Plaintiffs initiated litigation in Nova Scotia in June 2010 and pursued that claim for almost two years before filing suit here in Massachusetts. There is no indication in the record that Mr. Metcalf's injuries grew noticeably more severe between June 2010 and June 2012. So although his medical needs unequivocally constitute a substantial obstacle to conducting litigation in Nova Scotia, this Court must find that Plaintiffs were aware of this complication in June 2010 and nevertheless chose to file suit in Canada. Additionally, Defendant avers that many material witnesses other than Plaintiffs themselves and their immediate family members are Canadian residents, beyond the subpoena power of this Court.

Nevertheless, Plaintiffs are American citizens seeking justice in an American court, so Defendant must overcome the strong presumption in favor of American forums for American

plaintiffs.  Considered in full, this Court finds the equities of this case are equally balanced and

therefore Defendant has not met the "heavy burden" imposed by *Adelson I*.  *Adelson I*, 510 F.3d

43, 52.  Defendant's motion to dismiss on grounds of *forum non conveniens* is unsuccessful.

### c. *Improper Venue*

Defendant finally argues for dismissal under Fed. R. Civ. P. 12(b)(3), improper venue.

Defendant's argument here rests largely on a forum selection clause included as term (l) in the

terms and conditions given to Plaintiffs after finalizing their ticket purchase in Portland, Maine.

As discussed above in section II, the affidavit of Donald Cormier and other extrinsic evidence

submitted by the Defendant cannot be considered  in evaluating the strength of this Rule 12(b)(3)

motion to dismiss.

Plaintiffs make several arguments with regard to the validity of the forum selection

clause.  First they claim that the contract between Plaintiffs and Defendant did not include any of

the terms and conditions contained in *Plaintiff's Exhibit C* (Docket No. 12-6) at all.  Plaintiffs

plead that no explicit terms and conditions of any kind were communicated to them prior to

August 2009.  Plaintiffs argue that the full and complete contract between the parties was

consummated in February 2009 when Nicole Green reserved her tickets by phone, paid for the

same via credit card, and received confirmation emails.  Such a contract would be completely

silent as to waivers of liability, terms of cancellation, force majeure, forum selection and other

contractual provisions that are standard trade practice for passage contracts.  Absent some

indication that such an atypical contract was the express intention of both parties—and no such

evidence exists in the record—this Court is reluctant to make such a finding.  A final

determination of exactly what terms were and were not included in the contract between

Plaintiffs and Defendant would therefore require a more complete examination of the

circumstances surrounding contract formation, a fact which itself suggests that dismissal is likely not appropriate at this time.[5]

Moreover, even if the forum selection clause was included in the contract between Plaintiffs and Defendant, it would not be automatically enforceable.  The controlling caselaw for forum selection clauses in contracts for passenger transport is *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 111 S.Ct. 152 (1991).  In that case the Supreme Court held that such clauses are presumptively valid as they allow consumers to purchases tickets at reduced price by creating cost certainty for passenger vessel operators.  *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 111 S.Ct. 1522 (1991).  This presumption can be overcome only by a "strong showing" that the clause is unreasonable.  *In re Eternity Shipping, Ltd.*, 444 F.Supp.2d 347, 378 (D. Md. 2006).  In order to be reasonable, forum selection clauses must be both (1) substantively reasonable in its terms and (2) reasonably communicated to the passenger.  *Lousararian v. Royal Caribbean Corp.*, 951 F.2d 7, 8-9 (1st Cir. 1991).

The Fourth Circuit has indentified the following factors as illustrative when considering substantive reasonableness:

1.   [contract] formation was induced by fraud or overreaching;
2.   the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum;
3.   the fundamental unfairness of the chosen [forum] may deprive the plaintiff of a remedy; or
4.   enforcement [of the forum selection clause] would contravene a strong public policy of the forum state.

*Eternity Shipping,* at 378 n.82 (citing *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)).  In the case at hand, none of these four factors are present.  There is no evidence in the

---

[5] The Court notes that some terms and conditions were displayed on Defendant's website, mostly relating to early cancellation policies and not including a forum selection clause.  However, Plaintiffs do not admit to seeing these terms, nor are they contained within Plaintiffs' complaint or supplemental filings.  These terms will therefore not be considered at this time.

record of fraud or overreaching on the part of Defendant.  The ongoing litigation in Canada demonstrates that Plaintiffs will not be deprived of their "day in court" by the forum-selection clause.  Nor is there any reason to believe that the Canadian justice system is fundamentally unfair to Plaintiffs so as to deprive them of a remedy.[6]  The fourth factor turns on considerations of public policy and, as discussed above with regard to *forum non conveniens*, there is a strong public policy in the United States favoring litigation in American courts for American plaintiffs. *Adelson I*, 510 F.3d at 52.  However, this concern is less weighty where the alternative forum is one such as Canada, a robust common law system in a stable, friendly democracy.  The forum selection clause contained in term (l) is therefore substantively reasonable in its terms.  It will be enforced so long as it was reasonably communicated to Plaintiffs.

Turning to this second prong of the reasonableness standard, courts have consistently held that the standard of review for "reasonable communicativeness" is the presence or absence of a passenger's *opportunity* to learn the terms and conditions of passage; a passenger's actual knowledge of those terms is largely irrelevant.  *Lousararian*, 951 F.2d at 11.  The Court notes that this analysis is very fact-sensitive and "[d]iffering circumstances may render the same ticket binding on one passenger in one case, yet invalid as against another in another case." *Shankles v. Costa Armtori*, 722 F.2d 861, 864-66 (1st Cir. 1983).  Here, although Plaintiffs admit to not reading the terms and conditions contained within the materials received along with their tickets, they do admit to receiving them prior to boarding The CAT or leaving U.S. territory.  Exactly when Plaintiffs received these terms is disputed by the parties.  Defendant asserts that the jacket

---

[6] Plaintiffs plead that they are statutorily limited from recovering in excess of $264,607 in Canada.  This Court is sympathetic to their position as Mr. Metcalf's medical expenses have already significantly exceeded this amount and are be expected to grow still further.  Nevertheless, the test established by *Eternity Shipping* asks only if the Plaintiffs will be deprived of any remedy at all, rather than a remedy sufficient to satisfy their medical requirements. *Eternity Shipping*, at 378 n.82 (citing Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)).

containing the terms was given to Plaintiffs more than thirty minutes prior to boarding.[7]

Plaintiffs aver that they received the terms no more than ten minutes before boarding The CAT

and that they were in the middle of a long line of vehicles waiting to board the vessel for that

entire period.  Under a 12(b)(6) standard of review, this Court must take the Plaintiff's well-

pleaded facts as true, and therefore at this stage of litigation Plaintiffs must be considered to have

received the jacket (and the included terms and conditions) only a few minutes prior to boarding

The CAT .

Courts in both the First and Second Circuits have found that maritime forum selection

clauses are unenforceable as a matter of law where passengers received the full terms and

conditions of passage only minutes before boarding a vessel.  *Ward v. Cross Sound Ferry*, 273

F.3d 520, 526 (2[d] Cir. 2001); *Hoekstra v. Caribbean Cruises, LTD.*, 360 F.Supp.2d 362, 366 (D.

P. R. 2005).  *Hoekstra* presents facts similar to the case at hand: the plaintiffs were passengers on

a pleasure cruise who, despite a prior reservation, were issued tickets containing additional terms

and conditions—including a forum selection clause—immediately prior to boarding their vessel.

*Hoekstra*, 360 F.Supp.2d at 366.  Like Plaintiffs here, the plaintiffs in *Hoekstra* received no

notice of any additional terms prior to receiving their physical tickets.  *Hoekstra*, 360 F.Supp.2d

at 366.  The court in *Hoekstra* found that it would be improper for a court to impute the notice

necessary to enforce a forum selection clause to passengers who received notice of the clause

only "at the pier."  *Hoekstra*, 360 F.Supp.2d at 366.

The Second Circuit's decision in *Ward* is particularly helpful in this case, although the

underlying facts are slightly different.  In *Ward* a walk-on passenger purchased a ticket

---

[7] Defendant's assertion that Plaintiffs waited more than thirty minutes between receiving the ticket and boarding The CAT is based upon deposition testimony by Mr. Metcalf.  However, the testimony in full is ambiguous: it is not clear whether or not Mr. Metcalf is referring the specific interval between receiving the terms and conditions and boarding The CAT, or the interval between arriving at Defendant's boarding facility and driving onto The CAT .

immediately prior to boarding a ferry.  *Ward*, 273 F.3d at 522.  The ticket itself contained the

passenger's only notice of a partial liability waiver and was collected in its entirety by ferry

personnel just a few minutes after being purchased.[8]  *Id.*  The district court found that the

plaintiff had sufficient opportunity to comprehend these additional terms and conditions because

they were short enough that even a few minutes was enough time to read them in full.  *Id.* at 525.

The court below therefore enforced the liability waiver and granted summary judgment against

the plaintiff.  *Id.*  The Second Circuit held that the trial court had

> confuse[d] the significant question of whether [the defendant in *Ward*] reasonably communicated
> to passengers that the ticket contained important terms and conditions, given the amount of time
> [the defendant in *Ward*] allowed passengers to possess the tickets, with the less important question
> of whether it was possible to read the ticket in the amount of time provided.

*Id.*  In reversing the trial court's decision, the Second Circuit found that even though it was

*possible* to read the additional terms in the available few minutes, it was unreasonable to

construe such a brief opportunity as sufficient notice.[9]  *Id.* at 525-26.

   In the context of this caselaw, it is clear that Plaintiffs here were not afforded a

reasonable opportunity to become meaningfully acquainted with the full terms and conditions of

passage.  Despite their prior reservation Plaintiffs received the tickets no more than ten minutes

before boarding The CAT and were thereafter in a long line of cars driving aboard the ferry.  It

would be unreasonable to expect passengers already navigating a potentially crowded and

stressful driving environment to stop their car and hold up the line to read the terms and

---

[8] The clause in question waived the ferry operator's liability for loss or damage to personal property as well as personal injury absent written notice within six months and commencement of claims within one year.  *Ward*, 273 F.3d at 522.

[9] In *Ward* the fact that the ticket was collected in its entirety was significant, as the relevant clause was a partial liability waiver that took effect only after six months.  *Ward*, 273 F.3d at 522.  Collecting the entire ticket in *Ward* therefore deprived the plaintiff of six months' opportunity to read and understand the terms and conditions.  In the case at hand the relevant clause is a forum selection clause which went into effect immediately upon boarding, and the only possible recourse for a passenger who wished to reject the forum selection clause was to terminate the contract in its entirety.  This could only be accomplished before boarding the ferry and therefore the legally significant period of time in this case is the interval between the Plaintiffs receiving the full terms and boarding The CAT.

conditions of passage.  Nor is it clear what remedies would be available to passengers if they did read the terms and wished to terminate the contract.[10]  Plaintiffs' claim therefore survives Rule 12(b)(6) scrutiny and Defendant's motion to dismiss for improper venue is denied.

## IV. <u>Conclusion</u>

For the foregoing reasons *Def.'s Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue and Forum Non Conveniens* (Docket No. 5) is ***denied*** on all grounds. *Pl.'s Mot. to Strike Aff. of Donald Cormier* (Docket No. 10) is ***allowed*** in part and ***denied*** in part.

*/s/ **Timothy S. Hillman***
TIMOTHY S. HILLMAN
DISTRICT JUDGE

---

[10] The terms and conditions displayed on Defendant's website impose a $50.00 fee for cancellations within forty eight hours of departure.  As discussed *supra* note 5, it is not clear from the record that Plaintiffs ever saw these terms and conditions.  Nor is it certain that they would be bound by these online terms, even if they had seen them, given that Plaintiffs booked passage by telephone.