United States District Court
District of Massachusetts

|   |   |   |
|---|---|---|
| **KENNETH G. METCALF and** | ) | |
| **NANCY METCALF,** | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 12-40075-TSH |
| **BAY FERRIES LIMITED,** | ) | |
| Defendant | ) | |

**MEMORANDUM AND ORDER**
**September 9, 2014**

**HILLMAN, D.J.**

**Background**

Kenneth Metcalf ("K.Metcalf") and Nancy Metcalf (together with K. Metcalf "Metcalfs" or "Plaintiffs") have filed suit against Bay Ferries Limited ("Bay Ferries" or "Defendant") alleging claims for negligence and loss of consortium. More specifically, the Metcalfs allege that Bay Ferries was negligent in maintaining its ferry, HSC INCAT 059 ("The CAT") and that this negligence led directly to K.Metcalf's injuries and resulting damages to them.

This Memorandum and Order addresses Defendant's Motion For Application Of Canadian Law (Docket No. 38). For the following reasons, that motion is *denied*.

**Facts**

The Metcalfs are a married couple who at during the relevant time period, resided in Oxford, Massachusetts. Bay Ferries is a Canadian corporation with a principle place of business in Charlottetown, Prince Edward Island ("PEI"), Canada.

Bay Ferries owned and operated The CAT as a commercial passenger and vehicle ferry between Maine and Nova Scotia at all times relevant to this dispute.[1] The CAT is a 319-foot-long catamaran vessel capable of carrying more than eight hundred passengers and two hundred automobiles. Bay Ferries took delivery of The CAT in 2002 and operated it as a passenger ferry in the Gulf of Maine, between from 2002-2009. The CAT was registered in the Bahamas and operated entirely in Canadian and American territorial waters. At the times relevant to this action. Bay Ferries employed The CAT in ferry service between Portland, Maine and Yarmouth, Nova Scotia, as well as between Bar Harbor Maine and Yarmouth, Nova Scotia. The CAT made multiple trips per week between the two Maine locations and Yarmouth, Nova Scotia.

In 2009, Bay Ferries maintained an office in Bar Harbor, Maine and maintained phone and fax numbers at that location. Additionally, Bay Ferries maintained phone and fax numbers at the Portland Maine Terminal and had a post office box in Portland, Maine. All vessel repair and maintenance of The CAT was performed in Canada.

On February 19, 2009, the Metcalfs's daughter, Nicole Green ("Green") made a telephone reservation for their entire family to travel on The CAT from Portland, Maine to Yarmouth, Nova Scotia, leaving on August 14, 2009 and returning on August 19, 2009. The occasion for this journey was K.Metcalf's sixtieth birthday. Bay Ferries confirmed the

---

[1] Bay Ferries stopped operating The CAT in October 2009; The CAT was sold it to a Chinese corporation in 2011.

reservation via an email sent to Green. Green resided in Northborough, Massachusetts at the time she made the reservation.

On August 14, 2009, the Metcalf family drove to Portland, Maine from Oxford, Massachusetts, an approximately three hour trip. They boarded The CAT at the Portland ferry terminal. The CAT then made an approximately six-hour voyage to Yarmouth, Nova Scotia. The Metcalfs and their family prepared to disembark at the terminal dock in Yarmouth, Nova Scotia. As they began descending the stairs from The CAT's passenger deck to the lower vehicle deck, K.Metcalf fell, injuring his cervical spine. Members of the crew and other ferry passengers came to K.Metcalf's aid. Shortly thereafter, Canadian emergency medical technicians came onboard The CAT and took K.Metcalf via ambulance to Yarmouth Regional Hospital. K. Metcalf was later moved to Queen Elizabeth Hospital in Halifax, Nova Scotia for stabilization and intensive care. After six days of treatment in Canada, K.Metcalf was airlifted to Massachusetts for continuing medical care, and has not traveled any further afield than Boston, Massachusetts, since sustaining the injury. As a result of this fall, K.Metcalf fractured several of his cervical vertebrae and is now an incomplete C5-C7 tetraplegic, largely confined to a wheelchair. He requires some sixty hours of personal care attendance per week. This personal care is currently paid for by Cerebral Palsy of Massachusetts, located in Quincy, Massachusetts. Plaintiffs aver that they are unable to pay for a personal care attendant to travel with them to Canada should it become necessary for them to attend a trial in Nova Scotia.

## Discussion

There is no dispute that maritime law governs this dispute[2]; the only question is whether United States or Canadian maritime law governs. In order to determine which country's

---

[2] Maritime law governs if the tort at issue falls under admiralty jurisdiction, that is, if it occurred on navigable waters while engaged in a significant maritime activity. *See Carey v. Bahama Cruise Lines*, 864 F.2d

3

maritime law applies, admiralty choice of law principles apply. Choice of Law analysis for a Federal Court applying admiralty law is controlled by the following eight-factor test: "(1) the place of the wrongful act, (2) the flag under which the ship sails, (3) the domicile of the injured party, (4) the allegiance or domicile of the vessel owner, (5) the place where the contract was formed, (6) the inaccessability of the foreign forum, (7) the law of the forum and, (8) the vessel owner's base of operations." *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S.Ct. 1731 (1970); *see also Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468 (1959); *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921 (1953); *Kukias v. Chandris Lines, Inc.*, 839 F.2d 860, 862 (1st Cir. 1988). The Court must weigh these factors and "apply the law of the state with the most substantial contacts giving rise to the claim...." *Carbotrade S.p.A. v. Bureau Veritas*, 99 F.3d 86, 90-91 (2d Cir.1996).

### Analysis of the Factors

#### The Law of the Flag

One of the more significant of the factors is the law of the flag. *See Bilyk v. The Vessel Nair*, 754 F.2d 1541 (9th Cir. 1985)(*citing Lauritzen,* 345 US at 584, 73 S.Ct. 921). However, in this case, the vessel is registered in the Bahamas, which has no other connection to the incident or the parties.

#### The Place Where The Wrongful Conduct Occurred

The place where the wrongful conduct/ injury occurred is Canada. However, with respect to shipboard torts, the courts have found that the place of injury "is of little significance." *Kukias*, 839 F.2d at 862 (amount and type of recovery foreign seaman should receive from

---

201, 207 n. 4 (1st Cir. 1988)( "For a tort to be considered maritime, it must meet two tests: the situs of the tort must be maritime (the location test) and the tort must bear a significant relationship to a traditional maritime activity (the nexus test)."). As noted, the parties do not dispute that K. Metcalf's injury, which occurred on a vessel while he was attempting to descend a staircase in preparation for de-boarding, is a maritime injury. *See Id.* (injury to cruise ship passenger caused by sliding gangway connected to cruise ship by tender is uniquely maritime injury).

foreign employer while sailing on foreign ship should not depend on wholly fortuitous circumstance of place of injury (*citing Romero*, 358 U.S. at 384, 79 S.Ct. 468)). I will note that the fact that K. Metcalf was brought to a Canadian hospital after the accident is also of little or no significance. *Kukias*, 839 F.2d at 860 (it would be unwise to allow choice of law to be influenced by factor, place of hospitalization, which is only slightly less fortuitous than that of place of wrongful act).

*The Base of Operations*

Plaintiffs attempts to dispute that Bay Ferries' base of operations is Canada because it maintained an office in Bar Harbor, Maine and had a presence in Portland, Maine. Furthermore, Plaintiffs contend that Bay Ferries had continuous contacts with Maine where it conducted business for over ten years, and The CAT ported in Maine for approximately five months out of the year.[3] Despite maintaining a presence in Maine, Bay Ferries' *base of operation* is Canada: Bay Ferries a privately owned Canadian company and its headquarters are centered in PEI, Canada. The CAT's home port is Canada and vessel repairs are made in Canada. The First Circuit has recognized that when resolving the issue of the defendant's/vessel owner's base of operations, the fact that the vessel travels regularly to ports in the United States and generates revenue from the United States ticket sales (even if it is the bulk of defendant's revenue), is not sufficient to prove that the its base of operations is the United States. *Kukias*, 839 F.2d at 864. Nonetheless, I do find that Bay Ferries' extensive contacts with the United States undercuts the significant weight generally attributed to this factor.

---

[3] The Plaintiffs invite the Court to review their *Mem. of L. In Sup. Of Pl's Opposition to Defendant's Motion To Dismiss For Lack Of Personal Jurisd., Improper Venue and Forum Non Conveniens* (Docket No. 12) "[f]or additional numerous and continuous contacts and operations that Defendant had with the United States." *See Mem. Of L. In Sup. Of Pls' Opp. To Def's Mot. For Application of Canadian L.* (Docket No. 41), at p 10. Plaintiffs' opposition to the motion dismiss is twenty-eight pages long and includes over 160 pages of attached exhibits. The Court declines the invitation to parse through these materials; if there were additional contacts which the Plaintiffs' wished to identify, they should have done so in their submissions regarding the instant motion, or at the very least, pointed the Court to specific page numbers of their opposition and/or exhibits thereto.

*The Domicile of the Injured Party*

The Metcalfs are both citizens of the United States, which is a significant factor. *Kukias*, 839 F.3d at 862. However, that the injured party is a United States citizen, in and of itself, is not sufficient reason to justify the application of American law. *See Bilyk*, 754 F.2d at 1545 (citing *Tijonaman v. A/S Glittre*, 340 F.2d 290, 291-92 (2$^d$ Cir. 1965)).

*The Allegiance or Domicile of the Vessel Owner*

Bay Ferries, the owner of The CAT, is a privately owned Canadian company. While Bay Ferries may have offices in Maine, its true ownership lies in Canada and therefore, it is not a "'foreign shell created by American interests to avoid the requirements of American law.'" *Kukias*, 839 F.2d at 862 (citation to quoted case omitted). This factor is generally attributed little weight.

*Place of Contract*

While the parties disagree as to whether the contract was formed in Maine or Massachusetts, it is undisputed that it was formed in the United States. However, the place of contract is *generally* seen as fortuitous and given little weight, particularly where as in this case, the Court has found that there is no contractual agreement as to choice of law. *See Kukias*, 839 F.2d at 862-63.

*The Inaccessibility of the Foreign Forum*

The Court will normally look at the resources, expense and time traveling to a foreign forum. Lauritzen, 345 U.S. at 590, 73 S.Ct 921.[4] However in this case, Canada is one of the three forums in which the Plaintiffs have filed suit. Therefore, it would be somewhat

---

[4] In arguing this factor, Plaintiffs point to the fact that in denying Defendant's motion to dismiss, this Court indicated that K. Metcalf's medical needs constitute a substantial obstacle to conducting the litigation in Nova Scotia. *See Metcalf v. Bay Ferries Ltd.*, 937 F.Supp.2d 147, 157 (D.Mass. 2013). However, choice of law analysis is analyzed separately and is distinct from the law applicable to motions for change of venue and forum non conveniens.

6

disingenuous for the Plaintiffs to argue that the Canadian forum is inaccessible. Indeed, there is no doubt that the Canadian forum is available. Nonetheless, I agree with the Plaintiffs that this factor is insignificant.

### *The Law of the Forum*

As noted above, the issue is whether the maritime law of the United States or Canada would apply. United States law is the law of the forum. This factor is generally deemed largely irrelevant.

### *Application of the Factors*

Of the three most significant *Lauritzen-Rhoditis* factors, one (law of the flag) favors the Bahamas, the domicile of the injured party favors United States law, and the base of operations favors Canadian law. Bay Ferries suggests that under these circumstances, the Court should apply Bahamian law, as the law of the flag is the most important factor and thus, the default position if all else is equal. I disagree. Applying the law of a jurisdiction with such tenuous relationship to the parties and which has little interest in having its law applied in this case would not advance any policy and would disrespect the two jurisdictions which do have a relationship to the parties and therefore, a significant interest.[5] Furthermore, some Court have suggested that where the vessel is engaged in regular, limited travel, such as in this case, *i.e.*, The CAT regularly traveled only between Maine and Yarmouth, Nova Scotia and not in "traditional blue-water maritime activities crossing through waters of competing nations," then factors such as law of the flag and allegiance of the defendants must be accorded less weight, while factors such as plaintiff's citizenship and residence, the place of contract and the place of injury must be

---

[5] Indeed, both countries have a significant policy interest: Canada, which limits the amount of pain and suffering damages recoverable in such cases has an interest in protecting Canadian defendants such as Bay Ferries, while the United States, which does not impose any such limitations, has an interest in seeing its citizens obtain a fair and reasonable recovery. In this case, the public policy considerations effectively cancel each other out.

accorded more weight.  This is so because where the vessel's travel is more limited, such factors are more predictable and less fortuitous. *See Solano v. Gulf King* 55, *Inc.,* 212 F.3d 902 (5th Cir. 2000);  *Ellerton v. Ellerton*, 745 F.Supp 2d 458, 462 (D.Vt.  2010)(certain factors are given more or less weight in non-traditional contexts, *i.e.*, where one can predict at the outset where injuries are likely to occur, nonfortuitously, in locale where vessel is stationed);  *Cacho v. Prince of Fundy Cruises, Ltd*, 722 A.2d 349 (Me.1998).

Although this is a close call, considering the totality of the circumstances, I find that United States maritime law applies.  The injury occurred in Canada and Bay Ferries's base of operations is Canada—for purposes of this case, both are weighty factors which favor application of Canadian law.  At the same time, the fact that Plaintiffs are United States citizens, that Bay Ferries maintained extensive ties to the United States (it had offices in and regularly traveled to two locations in Maine, where The CAT was docked for significant periods of time), and that the contract was entered into in the United States constitute sufficient contacts with the United States to tip the balance and render application of United States maritime law appropriate. *See Warn v. M/Y Maridome,* 169 F.3d 625, 628 (9th Cir. 1999)(the question to be answered by application of the *Lauritzen* factors is whether United States's  interests are sufficiently implicated to warrant application of United States law).

## Conclusion

For the foregoing reasons Defendant's Motion For Application Of Canadian Law (Docket No. 38) is ***denied***.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE